IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| EDWARD LEROY MARSHALL, | ) | |
| Petitioner, | ) | Civil Action No. 7:22cv00221 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| HAROLD W. CLARKE, | ) | By: Robert S. Ballou |
| Respondent. | ) | United States District Judge |

Edward Leroy Marshall, a Virginia inmate proceeding *pro se*, has filed a petition for a

writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2016 convictions and sentence

imposed by the Amherst County Circuit Court.  The respondent has filed a motion to dismiss on

several grounds, to which Marshall has responded.  Upon consideration of the full record, I find

that Marshall's federal habeas petition is untimely, and I will therefore grant the motion to

dismiss on that basis.

## I.  BACKGROUND

On April 14, 2015, a grand jury in Amherst County indicted Marshall for third offense

petty larceny in violation of Virginia Code §§ 18.2-96 and 18.2-104, burglary in violation of

Virginia Code § 18.2-89, murder in violation of Virginia Code § 18.2-32, and aggravated

malicious wounding in violation of Virginia Code § 18.2-51.2.  Trial R.[1] at 396-397.  Marshall's

first trial ended in a mistrial on the third day of the Commonwealth's case on August 26, 2015.

*Id.* at 469.  The trial began with a new jury on February 29, 2016.  The evidence presented

---

[1] Citations to "Trial R." refer to the records of the Amherst County Circuit Court in *Commonwealth v. Marshall*, Record Nos. CR15-15271-01 through CR15-15271-04, using the page numbers stamped in the lower right corner of each page.  Citations to the Virginia Supreme Court habeas record will be noted as "Habeas R.", using the typewritten numbers on the lower left corner of each page.

during the three-day trial, in the light most favorable to the Commonwealth, as the prevailing

party, was summarized by the Court of Appeals as follows:

> [B]etween 1:00 a.m. and 2:00 a.m. on January 22, 2015, someone broke through a side door of the residence of the two victims, attacked the victims with a blunt force object, and killed the eighty-one year old victim, N.F.  A.F., the other victim, suffered severe head injuries and had no memory of the attack afterwards. The side door to the house had a tool mark impression indicating it was pried open.
>
> A.F.'s wallet was in the room where the attack took place.  The wallet contained A.F.'s Sheetz Rewards card, a $25 Kroger gift card, and a $25 gift card for Olive Garden restaurant.  Two days after the attack, [Marshall] was in possession of A.F.'s Olive Garden gift card and the Sheetz Rewards card.  At a time just after the attacks, [Marshall's] cell phone was used to call the toll-free numbers on the back of the cards.  These numbers can be called to determine the balance on the cards.
>
> Law enforcement learned a red truck was seen in the area of the crimes between 1:30 a.m. and 1:45 a.m. on the date of the offenses. [Marshall] had been driving a red truck on that date.  Officers seized and searched the truck [Marshall] was driving.  It contained tools, including a crow bar, tire iron, and screwdrivers.  Law enforcement determined a tool of some type had been used to gain entry to the house through the side door.
>
> Shari Merrill told law enforcement she was with [Marshall] on the night of January 21, 2015, into the morning of January 22, 2015. She stated [Marshall] was driving a red S-10 pickup truck on those dates.  Merrill testified that on January 22, 2015, [Marshall] drove her to her home and then he left, stating he would be back.  Merrill smoked several cigarettes outside her residence, and when she into her home (sic), she saw that it was 1:30 a.m.  She estimated she was at her residence about forty-five minutes before [Marshall] returned.
>
> [Marshall] returned to Merrill's residence, and he again left sometime between 2:00 a.m. and 2:30 a.m.  He called Merrill at 3:00 a.m.  [Marshall] met Merrill at 9:30 a.m. on January 22, 2015, and [Marshall] gave her a Kroger gift card.  He told her the card had a $25 balance.  Merrill used the card and had lunch with appellant on January 22, 2015.  Merrill later gave the card to the police who determined it was the Kroger gift card that belonged to

A.F.  Merrill also testified that [Marshall] smoked crack cocaine several times on January 22, 2015.

Merrill testified [Marshall] removed his belongings from the red truck and put them into a Blazer owned by Merrill.  He asked Merrill to wash some of his clothes.  Law enforcement later recovered from the Blazer a pair of men's blue jeans containing several blood stains and a black jacket with a blood stain.  DNA analyses showed the deceased victim, N.F., could not be eliminated as a major contributor to the samples taken from bloodstains located on the front and back of the blue jeans and from the black jacket.  Merrill and [Marshall] could not be eliminated as contributors to a DNA "wearer" profile made from a sample taken from inside the waistband of the blue jeans.

In her three interviews with the police, Merrill provided different time frames for the times [Marshall] was not with her on the date of the offenses.  She denied that she ever intentionally lied, but she stated her memory was refreshed between interviews.

*Marshall v. Commonwealth*, Record No. 1208-16-3 at *2–3 (Va. Ct. App. Feb. 16, 2017) (per curiam) (unpublished).

After deliberating, the jury convicted Marshall of all counts.  After further evidence at the sentencing phase, the jury recommended a sentence of life in prison for aggravated malicious wounding, 40 years for second-degree murder, 20 years for burglary, and five years for third offense petty larceny.  Trial R. at 548–551.  Following consideration of the Sentencing Guidelines (which recommended a range of 15 years, 3 months to 34 years) and a sentencing hearing, the trial court imposed the sentences recommended by the jury, for a total time of life plus 65 years.  *Id.* at 595–597.

The court appointed new counsel for Marshall's appeal.  Marshall raised five assignments of error in his appeal to the Court of Appeals of Virginia.  The court denied his petition on four of those issues in its per curiam opinion of February 16, 2017.  After full briefing and oral argument, the court affirmed the judgment.  *Marshall v. Commonwealth*, Record No. 1208-16-3

3

(Va. Ct. App. Jan. 30, 2018).  Marshall's petition for appeal to the Supreme Court of Virginia

was refused.  *Marshall v. Commonwealth*, Record No. 180288 (Va. July 13, 2018).

On July 11, 2019, two days before the state statute of limitations expired, Marshall

mailed his state habeas petition to the Amherst County Circuit Court.  The clerk's office filed the

petition on July 25, 2019.[2]  By order entered November 19, 2019, the court dismissed the habeas

petition as untimely, but alternatively, the court also denied each claim on the merits.  *Marshall*

*v. Clarke*, No. CL19-719 (Amherst Cir. Ct. Nov. 19, 2019).  Marshall timely filed his Notice of

Appeal, which the Court of Appeals received on December 9, 2019.  According to the online

case information system, Marshall filed a petition and appendix with the court on January 31,

2020.  On February 14, 2020, the court of appeals noted that it lacked jurisdiction to consider the

habeas appeal and transferred the matter to the Supreme Court of Virginia.  By order entered

April 3, 2020, the Supreme Court ordered Marshall to file his petition in that court by May 4,

2020.  However, Marshall did not file his petition until July 1, 2021, over one year later,

accompanied by a simultaneous motion for extension of time.  The court denied the motion and

procedurally dismissed the appeal on August 23, 2021.  The court denied Marshall's petition for

rehearing as untimely on November 24, 2021.  The postmark on the envelope containing

Marshall's petition for rehearing, retained by the court, confirms that Marshall mailed the

petition one day after the deadline.

---

[2] There is conflicting information in the file regarding when the Amherst County Circuit Court received the state habeas petition.  In its final opinion and order, the state habeas court asserted that the petition was "untimely because it was filed at the earliest on August 13, 2019, approximately one month after the deadline." *Marshall v. Clarke,* No. CL19-719, op. at *3 (Amherst Cir. Ct. Nov. 13, 2019).  However, it appears that the court signed a service order, serving the habeas petition on the Attorney General, on August 7, 2019, and recited that the petition was filed in the Clerk's Office on or about July 25, 2019.  Att. to Pet. at 26, ECF No. 1.  The assigned judge recused himself on July 25, 2019, further suggesting that the court had received and was aware of the habeas petition in July. *Id.* at 24.  Finally, the record contains Marshall's offender Trust Account Statement, showing his purchase of the money order payable to Amherst County Circuit Court and his purchase of postage, both on July 11, 2019. *Id.* at 21. For purposes of this opinion, I accept that Marshall placed his state habeas petition in the institutional mail on July 11, 2019, rendering the petition timely in the Amherst County Circuit Court.

On April 17, 2022, Marshall mailed his § 2254 petition to this court.  After amending the petition in response to the court's conditional filing order, Marshall raised five claims:

1. Amherst County law enforcement officers violated protocol by arresting him on an outstanding Lynchburg warrant and then taking him to Amherst County to question him about the homicide.

2. The trial court denied his right to testify on his own behalf.

3. The trial court denied his request for a new attorney before the re-trial of his case.

4. The trial court denied his due process rights by denying his change of venue motion.

5. That his trial counsel was ineffective.

## II.  DISCUSSION

As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), the habeas statute imposes a one-year statute of limitations on federal habeas corpus claims.  That year begins to run from the latest of the following:

(A) the date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  The statute further notes that the time during which a properly filed application for State post-conviction or other collateral review is pending will not be counted toward the one year limitation.  28 U.S.C. § 2244(d)(2).

Marshall's claims do not raise any newly recognized constitutional rights, and he was aware of the issues no later than his trial.  Therefore, subsections (C) and (D) do not apply.  Under subsection (A), the most frequently applicable start date, I start by determining when the judgment of conviction became final, at the conclusion of Marshall's direct appeal or when the time for filing such an appeal ended.  Marshall carried his direct appeal through the Supreme Court of Virginia, which refused his petition on July 13, 2018.  He had 90 days in which to appeal to the United States Supreme Court, but he did not do so.  That 90 days expired on October 11, 2018.  That is the date on which the one-year limitation began to run, and the limitation period would end on October 11, 2019, absent tolling.

Marshall's properly filed state habeas petition, deemed filed on July 11, 2019, stopped the one-year clock after 273 days.  Upon final disposition of the state habeas proceedings, the clock would pick up where it left off, leaving Marshall with 92 days remaining before the statute of limitations ended.  *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000).  The one year does not start anew when the state habeas concludes; it just picks up where it left off.  *McHoney v. South Carolina*, 518 F. Supp. 2d 700, 703–04 (D.S.C. 2007).

As the respondent noted, even if the statute were tolled the entire time from when the petition was filed until the rehearing was denied by the Supreme Court of Virginia, on November 24, 2021, Marshall did not file his § 2254 petition in a timely manner.  The 92 days remaining on the statute expired February 24, 2022, almost two months before he mailed his federal petition.  Further, the facts of this case do not support a holding that Marshall's habeas was properly

pending the entire time.  The state high court set a deadline of May 4, 2020, for filing the habeas petition for appeal.  Once that date arrived, and no petition was filed, the tolling stopped, and the statutory clock restarted.  *Allen v. Mitchell*, 276 F.3d 183, 186 (4th Cir. 2001).  The 92 days elapsed on August 4, 2020, more than a year and a half before Marshall filed his § 2254 petition. Statutory tolling does not save his untimely claim.

The Supreme Court has recognized that the statute of limitations set forth for habeas petitions under the AEDPA is subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 636 (2010).  To be considered for equitable tolling, a petitioner must show that (1) he has been pursuing his rights diligently and (2) some extraordinary circumstances prevented his timely filing.  *Id.* at 649.  Marshall has not requested equitable tolling in this court, nor has he offered any reason, extraordinary or otherwise, for failing to file his federal petition in a timely manner. The burden is on Marshall to prove the appropriateness of equitable tolling.

In his Affidavit to the Supreme Court of Virginia, docketed as a Motion for Extension of Time to File, Marshall asserted that he had signed a contract with United Paralegal Services to prepare his state habeas appeal when the court ordered it to be filed by May 4, 2020.  He did not learn that his appeal had not been perfected until he received an inquiry letter from the court on February 17, 2021.[3]  Habeas R. at 73–75.  A prisoner is responsible for the actions of his agent, including his lawyer, in a habeas appeal.  A lawyer's simple negligence, including missing a deadline, is not an extraordinary circumstance entitling one to equitable tolling.  *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007); *Rouse v. Lee*, 339 F.3d 238, 247 (4th Cir. 2003).  Further,

---

[3] Marshall also asserted in his 2021 affidavit that his habeas appeal "is timely filed pursuant to COVID-19 tolling period."  Habeas R. at 75.  This assertion is incorrect.  The Supreme Court of Virginia ended the tolling of deadlines in the Supreme Court, including the deadline for filing petitions for appeal, effective July 20, 2020.  *In re: Seventh Order Extending Declaration of Judicial Emergency in Response to COVID-19 Emergency*, ¶ 3 (Va. July 8, 2020).  The habeas appeal was filed approximately one year after all tolling extensions had ended.  Marshall has not alleged that COVID-19 had any effect on the late filing of his federal petition.

a *pro se* litigant's ignorance of the law is not an extraordinary circumstance. *United States v. Sosa*, 364 F.3d 507, 512 (4 th Cir. 2004). These reasons did not justify his untimely appellate petition in state court, nor do they excuse Marshall's untimely filing in this court.

Nor has Marshall shown reasonable diligence. Even if we accept Marshall's argument that the service's failure to prepare the appeal should constitute extraordinary circumstances, Marshall knew the court had ordered his petition filed one month after its order. Because he learned in February 2021 that the petition had not been filed, reasonable diligence suggests that he would have filed his petition about a month later, but he did not file until five months later. He did not file his federal petition until four months after the petition for rehearing was denied on his untimely state habeas appeal. Throughout the course of his state habeas proceedings, Marshall has not been diligent in paying attention to timing deadlines. This lack of diligence prevented him from getting an audience with the Supreme Court of Virginia and resulted in a federal petition filed nearly two years too late. Equitable tolling does not save this untimely filing.

### III. CONCLUSION

When issuing a final order adverse to a § 2254 petitioner, I must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition would have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the

denial of a constitutional right.  *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012).  Marshall has not made such showings in this case.

I will grant the respondent's motion to dismiss as untimely, dismiss the petition for a writ of habeas corpus, and deny a certificate of appealability.

Enter:  April 28, 2023

*/s/ Robert S. Ballou*

Robert S. Ballou
United States District Judge